IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MAURECUS ADAMS,
#R41506,

Plaintiff,

vs.

LUKE FAIRLESS,
JACK YEN,
L. HARTLEROAD,
TRAVIS JAMES,
HALEY BASNETTE,
H. O'BRIEN,
JESSIE SMITH,
D. D. BROOKHART,
GOINS,
DUNCAN,
DR. SHAH,
A. DEE-HOUT,
H. LOCKHARD, and
WARDEN of LAWRENCE
CORRECTIONAL CENTER,

Defendants.                                   Case No. 17–cv–00907–DRH

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Maurecus Adams, an inmate who is currently incarcerated in Lawrence Correctional Center, filed a civil rights action pursuant to 42 U.S.C. § 1983 against officials at Menard, Stateville, and Lawrence Correctional Centers. *See Adams v. Harrington*, No. 17-cv-715-DRH (S.D. Ill.) ("original action"). Pursuant to *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), this Court severed the claims in the original action into two additional cases. (Doc. 1, instant action).

The instant case addresses the claims that arose at Lawrence (*i.e.*, "Counts 10-12"). (Doc. 1, pp. 9, 12-13). In connection with these claims, Plaintiff seeks declaratory judgment, monetary damages, injunctive relief,[1] and a pardon.[2]

Counts 10-12 are now subject to preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>>
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the

---

[1] Plaintiff specifically requests a lie detector test, a drug test, and a test to determine whether he was given an electronic transmission device. (Doc. 2, p. 17). He also asks that the defendants be ordered to pay for "all medical treatment . . . indefinitely." *Id*.
[2] This relief is not available under 42 U.S.C. § 1983.

2

factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). All of the claims in this severed case are frivolous and shall therefore be dismissed.

**Complaint**

Before transferring to Lawrence in 2015, Plaintiff was housed at Menard and Stateville. (Doc. 2). Pertinent to Counts 10-12, Plaintiff alleges that Menard officials attempted to torture and kill him in 2014. (Doc. 2, pp. 8-10). They allegedly injected Plaintiff with Drug S6K and HIV, in an effort to infect him with the virus and cause a deadly allergic reaction. (Doc. 2, pp. 8-9). Menard officials also fed Plaintiff juice boxes full of urine. (Doc. 2, p. 10). One of these juice boxes allegedly contained an electronic transmitter that became lodged between Plaintiff's throat and chest when he drank the contents of the box. *Id.* Plaintiff claims that the transmitter allows the prison to monitor and control his thoughts. *Id.* Although Plaintiff complained about the device to Menard officials, they refused to document his complaints. *Id.*

After transferring to Lawrence, Plaintiff met with Doctor Luke Fairless, a member of Lawrence's psychiatric team, on August 7, 2015, August 14, 2015, September 22, 2015, August 12, 2016, November 14, 2016, and November 15, 2016. (Doc. 2, p. 13). Plaintiff told Doctor Fairless about "everything that took place . . . in Menard," including his suspected poisoning and the "human electronic transmission device" he was fed. *Id.* Doctor Fairless offered Plaintiff medication for delusions "without [re]search." *Id.* The doctor also indicated that

3

he would deny all requests for transfers. (Doc. 2, p. 14).

Plaintiff received psychiatric treatment from Doctor Jack Yen via telemedicine on August 14, 2015, September 18, 2015, November 20, 2015, December 18, 2015, January 8, 2016, January 29, 2016, and March 4, 2016. (Doc. 2, p. 14). When Plaintiff told the doctor about his problems, Doctor Yen did not seem to understand. *Id*. He offered Plaintiff medication "without [re]searching" his condition. *Id*.

Plaintiff spoke with LPC Hartleroad between August 26, 2016 and October 21, 2016. (Doc. 2, p. 14). He told Hartleroad about "everything that [was] going on" but claims that nothing was done. *Id*.

Plaintiff spoke with PA-C Travis James on October 13, 2016, November 9, 2016, and November 16, 2016. (Doc. 2, p. 14). Plaintiff also told James "everything that [was] going on," including what happened to him at Menard. *Id*. James agreed that Plaintiff was "going through some s***" but said there was nothing he could do to help. *Id*.

Plaintiff spoke with LPC Haley Basnette about "everything that happened" to him on October 16, 2016, November 13, 2016, November 21, 2016, December 12, 2016, and January 10, 2017. (Doc. 2, p. 14). She offered Plaintiff medication "without an[y] research." *Id*.

On November 8, 2016, LCSW O'Brien spoke with Plaintiff about the device he was given. (Doc. 2, pp. 14-15). She wrote down the name of the device and then diagnosed him as being delusional "without research." (Doc. 2, p. 15).

4

Plaintiff also spoke with Jessie Smith on May 22, 2015, June 8, 2015, and October 17, 2016. (Doc. 2, p. 15). When he told her "what was going on," she offered Plaintiff medication but did not document anything he said. *Id.*

Plaintiff received the same response from LCPC Dee-Hout on November 12, 2016. (Doc. 2, p. 15).

Plaintiff reported his problems to Doctor Lockhard, while also complaining of constipation, on September 4, 2016, September 8, 2016, and October 1, 2016. (Doc. 2, p. 15). The doctor provided Plaintiff with Mag Citrate,[3] which he has continued taking "to this day." *Id.*

When Plaintiff told Doctor Shah what "was going on with [him]" and "about [his] problems" on November 21, 2016, January 16, 2017, February 6, 2017, March 2, 2017, and March 7, 2017, the doctor agreed to refer Plaintiff to a "specialist." (Doc. 2, p. 15). Plaintiff was never referred. *Id.* When Plaintiff asked Doctor Shah about the referral on March 2, 2017, the doctor indicated that "Psych" told him that he lacked the necessary authority to refer Plaintiff to a specialist. *Id.*

Plaintiff wrote to Warden Brookhart on August 8, 2016, August 11, 2016, and August 15, 2016, and she sent him to see Doctor Fairless. (Doc. 2, p. 16).

Plaintiff asked Warden Duncan to investigate his claims of poisoning against Menard officials in letters dated August 3, 2015 and August 26, 2015. (Doc. 2, p. 16). However, Plaintiff received no response from the warden. *Id.*

---

[3] Magnesium citrate is a naturally occurring mineral that is used as a laxative to treat occasional constipation. *See* https://www.drugs.com/mtm/magnesium-citrate.html (last visited Oct. 12, 2017).

Warden Goins promised to respond to letters Plaintiff wrote between August 3, 2015 and October 20, 2015. (Doc. 2, p. 16). However, the warden never did so. *Id.*

## **Discussion**

This case focuses on the following three claims that arose at Lawrence:

**Count 10 -** Fairless, Yen, Hartleroad, James, Basnette, O'Brien, Smith, Dee-Hout, and Shah were deliberately indifferent to Plaintiff's serious medical needs when they diagnosed him with delusional disorder in lieu of treating him for poison and insertion of an electronic transmittal device in violation of Plaintiff's Fifth, Eighth, and Fourteenth Amendment rights.

**Count 11 -** Lockhard was deliberately indifferent to Plaintiff's serious medical needs when he provided Plaintiff with Mag Citrate in violation of Plaintiff's Fifth, Eighth, and Fourteenth Amendment rights.

**Count 12 -** Brookhart, Duncan, and Goins failed to adequately respond to Plaintiff's letters regarding his treatment and/or the events at Menard in violation of Plaintiff's Fifth, Eighth, and Fourteenth Amendment rights.

(*See* Doc. 2, p. 9). The parties and the Court will continue to use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

District courts are required to screen prisoner complaints and dismiss a "complaint, or any portion of the complaint . . . [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). Counts 10, 11, and 12 are subject to dismissal under this standard. All of the claims in this case are frivolous.

Allegations are "factually frivolous" when they are "clearly baseless," "fanciful," "fantastic," "delusional," "irrational," or "wholly incredible." *Felton v. City of Chicago*, 827 F.3d 632, 635 (7th Cir. 2016) (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)). Allegations that are "unlikely," improbable," or "strange" do not satisfy this standard. *Id*. A claim is considered legally frivolous when it is "based on an indisputably meritless legal theory." *Felton*, 827 F.3d at 635 (citing *Neitzke*, 490 U.S. at 327-28). All of Plaintiff's legal claims fit into these categories.

Count 10 arises from allegations that are factually frivolous. The claim hinges on Plaintiff's belief that he was poisoned with HIV, drugged, and given juice boxes full of urine and as well as an electronic transmitter device. (Doc. 2). His claims against Menard officials in the original action were dismissed as being factually frivolous. (Doc. 8, original action). In the Order Dismissing Case, this Court pointed out that a chest x-ray report submitted with the Complaint indicated that no foreign objects were visible in Plaintiff's chest. (Doc. 8, p. 7, original action). Plaintiff conceded in another exhibit that he tested negative for HIV. *Id*. Finally, numerous medical professionals diagnosed him as being delusional. *Id*.

Plaintiff's claims against Lawrence officials in this case arise from the same beliefs and Plaintiff's resulting diagnosis with delusions. (Doc. 2, pp. 13-16). Plaintiff disagrees with this diagnosis and the treatment he was offered at

7

Lawrence. *Id.* However, his diagnosis and decision to forego treatment does not give rise to a colorable constitutional claim against the Lawrence defendants.

This claim is not unlike claims asserted by a prisoner in *Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 774-75 (7th Cir. 2002). There, the prisoner-plaintiff alleged that he was drugged and raped by fellow inmates, after guards at three different prisons unlocked his cell door at night and allowed the inmates to enter. *Gladney*, 302 F.3d at 774. Plaintiff only realized he was drugged and raped when he discovered a lone needle mark under his lip. *Id.* The suit was dismissed with prejudice at screening as being factually frivolous, and the Seventh Circuit upheld the district court's decision. *Id.* The Court indicated that "no evidentiary hearing is required in a prisoner's case when the factual allegations are incredible." *Id.* Like the claims in *Gladney*, Plaintiff's claim against Lawrence officials in Count 10 is factually frivolous because the claim arises from purely delusional beliefs, fantastic allegations, and baseless assertions of deliberate indifference against the defendants.

Count 11 is legally and factually frivolous. Plaintiff claims that he complained of constipation to Doctor Lockhard while also describing what happened at Menard, and he was given "Mag Citrate." (Doc. 2, p. 15). Plaintiff admits that he continues to take it "to this day." *Id.* Magnesium citrate is commonly used to treat constipation. Plaintiff offers no indication that it was ineffective or that he returned to Lockhard with additional complaints regarding

constipation. Instead, Plaintiff baldly asserts that the defendant violated his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments.

To the extent this claim arises from Plaintiff's disagreement with the doctor's treatment decision regarding constipation, Count 11 is legally frivolous. Mere disagreement with a physician's chosen course of an inmate's medical treatment does not amount to deliberate indifference under the Eighth Amendment. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not take sides in disagreements about medical personnel's judgments or techniques); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To the extent the claim arises from Plaintiff's disagreement with Lockhard's decision to ignore his complaints about Menard, Count 11 is factually frivolous for the same reasons Count 10 is frivolous. Either way, Count 11 against Doctor Lockhard shall be dismissed with prejudice because it is frivolous.

Finally, Count 12 is also factually and legally frivolous. Plaintiff complains that several high-ranking officials at Lawrence failed to appropriately respond to his written complaints about Menard. Warden Brookhart responded to his complaints by sending him to the psychiatrist, and Wardens Duncan and Goins did not respond to his complaints. (Doc. 2, p. 16).

9

The fact that a supervisor, such as a warden, received a complaint about the actions of another individual does not create liability. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n. 3 (7th Cir. 2008); *George v. Smith*, 507 F.3d at 609; *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). In order to be held individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Although involvement in the grievance process sometimes establishes personal involvement in a constitutional violation, there is no underlying constitutional violation here to support this claim against the wardens. *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). The Complaint offers no basis for finding that any of these individuals was personally responsible for a violation of Plaintiff's constitutional rights. Count 12 shall also be dismissed with prejudice because it is both factually and legally frivolous.

## Disposition

**IT IS HEREBY ORDERED** that the Complaint (Doc. 2) and this action are **DISMISSED** with prejudice as being frivolous. This includes **COUNTS 10, 11,**

and **12**, which are the only claims at issue in this severed case and are all factually and/or legally frivolous.

Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this Order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. 4(A)(4). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467. Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of judgment, and this 28-day deadline cannot be extended.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:**

Digitally signed by Judge David R. Herndon
Date: 2017.10.13 12:16:00 -05'00'

**United States District Judge**